UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSE A. FLORIAN,<br>    *Plaintiff,* | : | Case No. 3:25-CV-1017 (SVN) |
| | : | |
| v. | : | |
| | : | |
| JEAN CAPLAN, *et al.*,<br>    *Defendants*. | :<br>: | October 24, 2025 |

## INITIAL REVIEW ORDER

*Pro se* plaintiff Jose Florian, a sentenced[1] inmate currently incarcerated at MacDougall-Walker Correctional Institution ("MacDougall") filed this action pursuant to 42 U.S.C. § 1983. He names five defendants: Jean Caplan, Kathleen O'Keefe, Zhao Peng, Vernisa Augustin, and Dr. Pierre Estime—all medical providers at MacDougall. He brings claims under the Eighth Amendment and Connecticut state law, alleging that Defendants were deliberately indifferent to his serious medical needs and were negligent. Plaintiff sues Defendants in their individual capacities for damages as well as injunctive and declaratory relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

---

[1] Information on the Department of Correction website shows that Plaintiff was sentenced on June 11, 2024, to a term of imprisonment of twelve years. *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=444017 (last visited October 24, 2025). The Court may take judicial notice of matters of public record. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-CV-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2]  Based on this initial review, the Court orders as follows.

I.  **FACTUAL BACKGROUND**

The Court does not include herein all the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.

Plaintiff was originally imprisoned at the Hampden County Correctional Center ("Hampden") within the Massachusetts Department of Correction ("Massachusetts DOC"). Compl., ECF No. 1 ¶ 10.  While there, Plaintiff reported "right otalgia"[3] in March of 2023.  *Id.* ¶ 12.  Hampden officials sent Plaintiff to see an outside surgeon named Dr. Mason, who examined Plaintiff in April of 2023.  *Id.* ¶¶ 11–12.  Dr. Mason recommended that Plaintiff be evaluated by an otologist at the University of Connecticut "for consideration of CT temporal bones and potential surgical repair" given Plaintiff's upcoming transfer to the Connecticut Department of Correction ("Connecticut DOC").  *Id.* ¶ 13.

Prison officials transferred Plaintiff from Hampden to MacDougall in May of 2023.  *Id.* ¶ 14.  At MacDougall, Plaintiff continued to complain of ear pain.  *Id.* ¶ 15.  Plaintiff first saw

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).
[3] "Otalgia is 'a pain in the ear.'"  *O'Connor v. Berryhill*, No. 3:14-CV-01101 (AVC), 2017 WL 4387366, at *3 n.11 (D. Conn. Sept. 29, 2017) (quoting *Mosby's Medical, Nursing, & Allied Health Dictionary*, (6th ed. 2002) at 1248).

Jean Caplan, an Advanced Practice Registered Nurse, on or about November 1, 2023. *Id.* ¶¶ 5, 16. Caplan acknowledged Plaintiff's ear disorder, noted a "right ear anomaly," and indicated that she would obtain Plaintiff's medical records from Hampden. *Id.* ¶ 16. Three days later, Plaintiff submitted a medical request asking medical staff to check his ear, because he had been told to write again if the problem persisted. *Id.* ¶ 17. Kathleen O'Keefe, a Registered Nurse, saw Plaintiff approximately two weeks after Caplan, and told him that the medical department had requested Plaintiff's records from Hampden but was "awaiting medical information." *Id.* ¶¶ 6, 18. Plaintiff continued to write medical staff about pain in his right ear. *Id.* ¶ 19.

Plaintiff submitted a sick call request in early April of 2024, due to his continuing pain. *Id.* ¶ 20. Plaintiff saw Sengchanh Vilayvong, a Registered Nurse, on April 13, 2024. *Id.* ¶ 21. Plaintiff told Vilayvong that he wanted to follow up on the surgery that Massachusetts DOC had "worked him up for." *Id.* Vilayvong saw Plaintiff again in July of 2024 and informed him that he had a "chronic care" appointment scheduled soon. *Id.* ¶ 23. Plaintiff wrote medical staff again in early October of 2024 indicating that he had previously asked five times to have his ear checked due to pain. *Id.* ¶ 25. Plaintiff saw Nurse Caplan again on October 7, 2024. *Id.* ¶ 26. Caplan prescribed Cipro, an antibiotic, at 500 mg to be taken with Plaintiff's other prescribed medication. *Id.* Plaintiff also saw Vernisa Augustin, a Registered Nurse, at this appointment. *Id.* ¶¶ 8, 27. Augustin acknowledged Plaintiff's complaints of pressure in his right inner ear. *Id.* ¶ 27.

Plaintiff submitted another medical request twelve days after seeing Caplan and Augustin. *Id.* ¶ 28. Plaintiff complained in that request that he had not been seen by a doctor for surgery and that his ear problem was affecting his throat and vision and causing "major headaches." *Id.* ¶ 28. Plaintiff saw Zhao Peng, a Registered Nurse, nine days after submitting this request. *Id.* ¶¶ 7, 30. Penq noted that Plaintiff had "red dried crusty deposits" in his right ear. *Id.* ¶ 30. Plaintiff

submitted another medical request on November 24, 2024, after his visit with Peng, complaining of "a really bad infection." *Id.* ¶ 31. Plaintiff saw Paulette Simon, a Registered Nurse, four days after submitting his request; Plaintiff stated that the antibiotics were not working. *Id.* ¶ 32. After evaluating Plaintiff, Simon contacted the on-call provider. *Id.* Plaintiff saw Dr. Estime, a MacDougall doctor, on December 1, 2024. *Id.* ¶¶ 9, 33. Dr. Estime confirmed that Plaintiff's right ear "contained erythema of [the] outer ear canal."[4] *Id.* ¶ 33. Dr. Estime instructed Plaintiff to continue taking medication previous providers had prescribed, and further prescribed ciprofloxacin. *Id.*

Plaintiff saw Dr. Estime for a follow-up appointment three months later, in February of 2025, after which Dr. Estime ordered X-rays. *Id.* ¶¶ 34–35. Dr. Estime received the X-ray results approximately three weeks later. *Id.* ¶ 35. Plaintiff saw Dr. Estime the day before the X-ray results arrived. *Id.* ¶ 38. Dr. Estime prescribed a ten-day course of Augmentin to treat Plaintiff's otalgia. *Id.* Plaintiff also saw Viviane Martell, a Registered Nurse, on the same date. *Id.* ¶ 39. Plaintiff saw Dr. Syed Naqvi, Registered Nurse Adam Cummings, and Licensed Practical Nurse Janette Markland-White for his ear pain in March of 2025. *Id.* ¶¶ 40–42. Plaintiff filed a "medical habeas petition" seeking medical care for his ear in late March of 2025. *Id.* ¶ 43.

Plaintiff wrote Dr. Estime through an informal resolution request in April of 2025 about Plaintiff's "excruciating pain and medication not working." *Id.* ¶ 44. Plaintiff also submitted a medical grievance, and Markland-White saw Plaintiff on April 11, 2025. *Id.* ¶¶ 45–46. Plaintiff submitted a request to Dr. Estime about ear pain in early May of 2025. *Id.* ¶ 47. Plaintiff saw Markland-White two days after submitting his request to Dr. Estime, complaining of severe ear

---

[4] "Erythema is a red discoloration of the skin caused by infectious agents, inflammation, drug hypersensitivity, or underlying disease." *Zoeller v. Berryhill*, No. 3:18-CV-19 (DFM), 2019 WL 2498388, at *6 n.15 (D. Conn. June 17, 2019).

pain "affecting daily living." *Id.* ¶ 48.  One day after seeing Markland White, Plaintiff submitted a request to medical stating that he could not hear in his right ear. *Id.* ¶ 49.  Plaintiff saw Nurse Simon again about three weeks after submitting this medical request. *Id.* ¶ 50.  On June 2, 2025, Dr. Estime signed an "offsite healthcare authorization form." *Id.* ¶ 51.  Plaintiff had not seen an otologist prior to Dr. Estime signing the offsite authorization form in early June of 2025. *Id.* ¶ 52.  While in Connecticut DOC custody, Plaintiff never saw an ear, nose, and throat specialist. *Id.* ¶ 53.

## II.  DISCUSSION

The Court construes Plaintiff's complaint as asserting two claims: (1) an Eighth Amendment deliberate indifference to serious medical needs claim and (2) a negligence claim under Connecticut state law.  *See id.* at 1.  The Court discusses each claim in turn.

### A.  Deliberate Indifference to Serious Medical Needs

The Court construes Plaintiff's complaint as containing a claim for deliberate indifference to serious medical needs under the Eighth Amendment.  "[T]o establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  As with all Eighth Amendment claims, a claim for deliberate indifference to medical needs has both an objective and subjective component.  *See id.*

The objective component requires Plaintiff to demonstrate a "'*serious* illness or injury' resulting in the infliction of unnecessary pain and suffering."  *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (emphasis in original) (quoting *Estelle*, 429 U.S. at 105).  The subjective component requires a prison official to have "act[ed] with a sufficiently culpable state of mind." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006), *abrogated on other grounds as recognized*

by *Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023). That "state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Id.* This is "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id.* It "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* "[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent." *Id.* As a result, "mere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703 (internal quotation marks and citation omitted). Further, "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.*

       1.    *Objective Prong*

The Court first considers whether Plaintiff's otalgia is a "serious illness or injury," in satisfaction of the objective element. *Estelle*, 429 U.S. at 105 (emphasis omitted). The observed "erythema of [the] outer ear canal," ECF No. 1 ¶ 33, suggests that Plaintiff's otalgia may have resulted from an ear infection. *See Zoeller*, 2019 WL 2498388, at *6 n.15; *Jackson v. UConn Health Mgmt.*, No. 3:20-CV-932 (AWT), 2023 WL 2433307, at *4 (D. Conn. Mar. 9, 2023) (equating otalgia with an ear infection). "Cases addressing whether an ear infection is a serious medical need are fact-specific." *Therrien v. Husband*, No. 3:10-CV-217 (VLB), 2011 WL 494771, at *3 (D. Conn. Feb. 7, 2011) (comparing cases). In such cases, courts have looked to whether the ear infection was "sufficiently 'important and worthy of comment or treatment'" and to "'the effect

[on the plaintiff] of denying the particular treatment.'" *Birch v. Quiros*, No. 3:24-CV-1025 (SRU), 2025 WL 844170, at *3 (D. Conn. Mar. 18, 2025) (quoting *Chance*, 143 F.3d at 702; *Smith v. Connecticut Dep't of Corr.*, No. 3:05-CV-960 (HBF), 2008 WL 918535, at *28 (D. Conn. Mar. 31, 2008) (citation omitted)).

Here, Dr. Mason thought Plaintiff's otalgia notable enough to recommend Plaintiff be seen by a specialist at the University of Connecticut in April of 2023. ECF No. 1 ¶ 13. Similarly, Dr. Estime thought Plaintiff's otalgia notable enough to justify consultation with an offsite provider in June of 2025. *Id.* ¶ 51. From 2023 to 2025, Plaintiff's otalgia was the source of chronic pain, affected his throat and vision, caused headaches, and eventually lead to hearing loss in his right ear. *Id.* ¶¶ 12, 49. On similar facts, courts have considered ear infections to be sufficiently serious. *See*, *e.g.*, *Birch*, 2025 WL 844170, at *2–4 (concluding ear infection was sufficiently serious when doctor "order[ed] a full blood work up, E.K.G., antibiotics, and Claritin" and plaintiff "had a blocked ear, a lump behind his ear, and flu-like symptoms" when he did not receive treatment); *see also McCarthy v. Wright*, No. 3:21-CV-1375 (VLB), 2021 WL 4973600, at *3 (D. Conn. Oct. 26, 2021) ("Determining whether an ear infection is a serious medical need is fact-specific, but courts generally have assumed that an ear infection accompanied by severe pain is a serious medical need." (citing *Therrien*, 2011 WL 494771, at *3 (citing cases))). Accordingly, Plaintiff's otalgia and the resulting symptoms are sufficiently serious to satisfy the objective element for purpose of initial review.

### 2.   *Subjective Prong*

The Court next considers whether Defendants "act[ed] with a sufficiently culpable state of mind," *Salahuddin*, 467 F.3d at 280, in satisfaction of the subjective element described above. Plaintiff's complaint sets forth his theory of liability for each defendant. Plaintiff asserts that

Caplan and Estime "failed to make [a] timely referral to [a] specialist," "continued a course of treatment known to be ineffective," "failed to remain and act on the course of treatment recommended" by Dr. Mason, "used a wait[-]and[-]see course of treatment," and failed to consult Plaintiff's medical records from Massachusetts DOC. ECF No. 1 ¶¶ 73, 74, 76, 77, 78. Plaintiff asserts that O'Keefe, Peng, and Augustin "failed to perform [a] gatekeeper role by referring Plaintiff to his provider or sick call to be examined and diagnosed so he could receive proper treatment in a timely manner." *Id.* ¶ 75.

Plaintiff's allegations that Caplan and Dr. Estime "continued a course of treatment known to be ineffective" and "used a wait[-]and[-]see course of treatment," *id.* ¶¶ 74, 77, are "largely disagreements over the proper course of treatment and accusations of negligence, which cannot alone make out a deliberate indifference claim." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 237–38 (2d Cir. 2007) (summary order) (citing *Chance,* 143 F.3d at 703). But "[p]rison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors." *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir. 1987) (noting that "[i]f defendants deliberately interfered with [plaintiff's] medically prescribed treatment solely for the purpose of causing him unnecessary pain, they may be subject to liability . . .").

Plaintiff asserts that Caplan and Dr. Estime "def[ied] the express instructions" of Dr. Mason by "fail[ing] to make [a] timely referral to [a] specialist" and "fail[ing] to remain and act on the course of treatment recommended" by Dr. Mason. ECF No. 1 ¶¶ 73, 76; *Mooney,* 824 F.2d at 196. Such allegations are sufficient to establish the subjective element for purposes of initial

8

review.[5] *See Ibbison v. Scagliarni*, No. 3:23-CV-1379 (SVN), 2024 WL 624045, at *10 (D. Conn. Feb. 14, 2024) (noting that "[c]orrectional staff may act with deliberate indifference if they intentionally deny or delay access to medical care or intentionally interfere with an inmate's prescribed treatment"); *Steele v. Ayotte*, No. 3:17-CV-1370 (CSH), 2018 WL 731796, at *12 (D. Conn. Feb. 6, 2018) (deliberate indifference may be proven by showing that officials "prevented [plaintiff] from receiving recommended treatment"); *Abdur-Raheem v. Selsky*, 806 F. Supp. 2d 628, 639 (W.D.N.Y. 2011) (noting that "allegations that prison officials denied or delayed recommended treatment by medical professionals may be sufficient to satisfy the deliberate-indifference standard") (citing *Gill*, 824 F.2d at 196). Accordingly, Plaintiff's deliberate indifference claim may proceed against Caplan and Dr. Estime for their failure to timely effectuate Plaintiff's ordered referral.

Plaintiff's deliberate indifference claim may not, however, proceed against O'Keefe, Peng, and Augustin. These defendants are all line nurses in the medical department who each only saw Plaintiff on one occasion. *See* ECF No. 1 ¶¶ 6, 7, 8, 18, 27, 30. Unlike more senior medical personal like Caplan and Dr. Estime, these line nurses likely did not have the authority to carry out Dr. Mason's recommendation to see an outside specialist. *Cf. id.* ¶¶ 5, 51 (describing Caplan as Plaintiff's "provider"; alleging that Dr. Estime signed the "offsite healthcare authorization form"). But it is unclear whether these line nurses had the authority to issue a sick call. The Court construes Plaintiff's allegation that these nurses "failed to perform [a] gatekeeper role by referring Plaintiff

---

[5] The Court notes that Plaintiff's complaint describes Dr. Mason's referral as a "recommendation[]." ECF No. 1 ¶ 13. In his report of Plaintiff's April 27, 2023, consultation, Dr. Mason also states he "recommended" Plaintiff see an otologist at UConn. Dr. Mason Report, Ex. A, ECF No. 1 at 35. At this early stage, the Court must construe Plaintiff's complaint liberally and thus resolves this tension of instruction versus recommendation in favor of Plaintiff. Further development of the record may confirm that Dr. Mason merely issued a recommendation for Plaintiff to see a specialist, which Defendant Estime then chose to disregard, and Defendant Caplan supported. If so, Caplan and Estime's decision to disregard would be an unactionable difference in medical opinion regarding treatment. *See Bellotto*, 248 F. App'x at 237–38. However, at this stage, Plaintiff may procced on his Eighth Amendment claim against Caplan and Estime.

to his provider or sick call to be examined and diagnosed so he could receive proper treatment in a timely manner," *id.* ¶ 75, as a complaint that they did not timely act on Plaintiff's medical requests.[6] To the extent these nurses had any control over when Plaintiff would be seen in the medical department (which is not a given), Plaintiff insufficiently alleges facts suggesting that their "failure to act … evinces a *conscious* disregard of a substantial risk of serious harm," *Chance*, 143 F.3d at 703, or, that they were "actually aware of a substantial risk that serious inmate harm w[ould] result," *Salahuddin,* 467 F.3d at 280, from any delay in seeing Plaintiff. As such, the deliberate indifference claims against O'Keefe, Peng, and Augustin are dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

B. <u>Negligence</u>

Plaintiff also brings a claim for negligence. *See* Compl., ECF No. 1. "[N]egligence . . . is not cognizable under section 1983." *Gray v. Passero*, No. 24-CV-185 (VDO), 2024 WL 1413031, at *4 (D. Conn. Apr. 2, 2024). But the Court may ordinarily exercise supplemental jurisdiction over negligence claims brought under Connecticut state law. *See* 28 U.S.C. § 1367(a); *Carmona v. Sliya*, No. 3:24-CV-814, 2024 WL 3964930, at *5 (D. Conn. Aug. 28, 2024) (exercising supplemental jurisdiction over plaintiff's state law negligence claim after permitting deliberate indifference claim to proceed).

Here, however, Plaintiff's state law negligence claim is barred by Connecticut General

---

[6] This "gatekeeper" theory of liability appears to originate from Tenth Circuit case law. *See*, *e.g.*, *Reneau v. Cardinas*, 852 F. App'x 311, 314 (10th Cir. 2021) ("A prison medical professional who serves solely as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role." (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (ellipsis and internal quotation marks omitted))). But Tenth Circuit case law is not binding on district courts located in the Second Circuit. *See Crayton v. Long Island R.R.*, No. 05-CV-1721(SLT) (SMG), 2006 WL 3833114, at *5 n.7 (E.D.N.Y. Dec. 29, 2006) ("Needless to say, Tenth Circuit decisions are not binding on this Court.").

Statutes § 4-165. That statute provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4-165(a); *see also Miller v. Egan*, 265 Conn. 301, 319 (2003) (state employees are not "personally liable for their negligent actions performed within the scope of their employment," but immunity does not apply to "reckless" conduct). Defendants all appear to be state employees who were acting within the scope of their employment. Thus, they are generally immune to state negligence claims. But, as Plaintiff has plausibly pleaded Eighth Amendment deliberate indifference claims against Caplan and Dr. Estime that, by definition, require a showing of at least reckless conduct, the Court construes Plaintiff's complaint to allege a claim of state law recklessness, even if the complaint improperly describes the claim as mere negligence.[7] The Court will permit Plaintiff to assert a state law claim of recklessness against these Defendants for further development of the record. Conn. Gen. Stat. § 4-165(a); *see also Miller*, 265 Conn. at 319. The negligence claim against O'Keefe, Peng, and Augustin, however, is dismissed, as Plaintiff has not adequately pleaded they acted recklessly.

### C. Relief Sought

Plaintiff may pursue damages against Caplan and Dr. Estime. He may also pursue the requested injunctive relief—that Caplan and Dr. Estime immediately arrange for Plaintiff to see an otologist to be examined for surgical repair, and that they carry out, without delay, the treatment recommended by Dr. Mason.

Plaintiff may not, however, pursue declaratory relief against any Defendant. "Declaratory relief serves to settle legal rights and remove uncertainty from legal relationships without awaiting

---

[7] This approach is consistent with the Court's obligation to offer special solicitude to *pro se* litigants.

a violation of the rights or a disturbance of the relationships." *Carmona*, 2024 WL 3964930, at *6 (internal quotation marked omitted). As such, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." *Orr v. Waterbury Police Dep't*, No. 3:17-CV-788 (VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018). "[I]f Plaintiff were to prevail on any constitutional claim proceeding in this action, a judgment in his favor would serve the same purpose as a declaration that Defendants violated his constitutional rights." *Petion v. Pearson*, No. 3:22-CV-1647 (OAW), 2023 WL 6050054, at *4 (D. Conn. Sept. 15, 2023). "Thus, dismissal of Plaintiff's declaratory judgment request is warranted because the declaratory relief plaintiff seeks is duplicative of his other causes of action." *Id.*

## ORDERS

Based on the foregoing, the Court issues the following orders:

Plaintiff may proceed on his individual capacity claims against Defendants Caplan and Dr. Estime based on deliberate indifference under the Eighth Amendment and recklessness under state law.

The Court DISMISSES all other claims and terminates all other Defendants.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth above against Defendants Caplan and Dr. Estime, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **November 24, 2025**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on Defendants named above in their individual capacities as described above.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **November 24, 2025**.  **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint.**  The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein.  If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **November 24, 2025**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c)2 provides that he **MUST** notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED** at Hartford, Connecticut, this 24th day of October, 2025.

                                                       /s/ Sarala V. Nagala
                                                      SARALA V. NAGALA
                                                      UNITED STATES DISTRICT JUDGE